## Walker v. Howard, et al.

(Decided December 1, 1925.)

### Appeal from Bell Circuit Court.

1. Reformation of Instruments—Written Contract Carefully Drawn Not Reformed, Except on Clear and Decisive Evidence.—Written contract deliberately and carefully drawn should not be reformed for mistake, except on clear and decisive evidence.

2. Reformation of Instruments—Mistake Must be Clearly Proved.—Mistake to warrant reformation must be clearly proved.

3. Reformation of Instruments—Proof Held Not to Warrant Reformation of Contract.—In action against signers of contract guaranteeing certain sum to be paid to person constructing railroad, it appearing defendants also signed a corporation's agreement to donate certain sum towards building of road, proof held not to warrant a reformation of contract whereby plaintiff assumed the

corporation's obligation to make such donation so as to relieve defendants from liability on the guaranty.

4. Appeal and Error—Parties Liable Under Guaranty Contract Held Not Entitled to Complain of Judgment More Favorable to Them Than Contract Warranted.—Parties who jointly with others guaranteed payment of bonus to builder of railroad held not entitled to complain of judgment for part of deficiency in proportion to their subscription, when less than amount of deficiency divided by number of guarantors; it being more favorable to them than terms of contract warranted.

5. Appeal and Error—No Motion for New Trial Necessary in Action Treated by Both Parties as Equity Cause.—Where both parties to action treated it as an equity cause, as evidenced by recitals in judgment, no motion for new trial was necessary as a condition to right to appeal from the judgment.

JAMES H. JEFFRIES and W. W. RAWLINGS for appellant.

H. C. CLAY for appellees.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

Prior to 1917 Clay county had no railroad, and some two or three years before 1917 Charles F. Heidrick of Pennsylvania came to Clay county to look over the situation. He had a survey made from a point on the L. & N. one mile north of Barbourville to Manchester. He did not have money enough to construct the road; people along it were anxious to have it built, so a subscription was gotten up by which a number of persons made donations for the building of the road. These subscriptions amounted to something over $60,000.00. Heidrick was unwilling to undertake the building of the road without a guaranty of $60,000.00, to be paid him when he had completed the road to the line between Clay and Knox counties, which was about one-half the distance of the road. This guaranty, dated October 12, 1915, was signed by twenty-eight persons, including D. L. Walker, the appellant here, and E. M. Howard, N. D. Smith and W. W. Eager, the appellees, as second parties. It contained, among other things, these provisions:

"1. The first party (Heidrick) agrees to prosecute the construction of said railroad to completion with due diligence and as fast as practicable so as to have same completed for operation by Jan-

uary 1, 1917, due allowance being made for strikes, accidents and other unavoidable delays.

"2. The second parties hereby agree and bind themselves, jointly and separately to pay first party, sixty thousand ($60,000.00) dollars, in cash, when the track is laid on said railroad from Barbourville to Clay-Knox county line, so that work trains can traverse same, or as soon thereafter as a surety bond is furnished in the sum of sixty-five thousand ($65,000.00) dollars for the completion of said railroad to Manchester, and upon filing said bond with second parties representatives hereinafter designated, the said sum of $60,000.00 shall be paid immediately to first party without further notice or demand by him.

"3. At the time of payment of the $60,000.00 to first party aforesaid, the first party shall designate or cause to be assigned to second parties, for collection the subscription agreements aforesaid, or any additional subscription agreements that may hereafter be obtained in Clay county, without recourse or liability on first party.

"It is agreed that any amount of said subscription collected in excess of $60,000.00 shall be paid over to first party promptly on collection, without deduction for cost of collection or interest on said $60,000.00, except the expense, if any, not including attorney fees, for the collection of the subscriptions of the Manchester Mining & Mfg. and the Orchard Knob Lumber & Coal Company."

Less than $60,000.00 of the subscriptions was collected. Walker paid the full $60,000.00, and failing to collect from the subscriptions $17,569.91, brought this action against appellees, alleging in his petition the facts above stated, and that all the other subscribers had paid their part of the subscriptions except the appellees, whose part was $819.76, and William Roach, whose part was $409.88. It was alleged in the petition that it was the mutual understanding and agreement between the parties that should a liability occur on the guaranty each should be liable for their part of this liability, in the proportion of the amounts of their donation agreement; that appellees signed an agreement of the Clay County Land and Lumber Company donating $1,000.00

to the enterprise and that their part of the deficiency was $819.76, for which the judgment was prayed. The defendants filed a demurrer to the petition; the demurrer was overruled. They then filed their answer and counter-claim and moved the court to transfer the case to the equity docket. In the answer, after denying the allegations of the petition, they pleaded that on September 9, 1916, a contract was made between the Clay County Land & Lumber Company and D. L. Walker, by which he assumed all the liability of these appellees under the guaranty contract, and they alleged that by mutual mistake of the parties and by mistake of the person who wrote the contract it did not clearly and fully set forth all of the agreement, and that the real agreement was that Walker was to pay for the Clay County Land & Lumber Company the thousand dollars, which it had subscribed, and that when this was paid these appellees were to be under no further liability on the guaranty contract. They prayed that the writing be reformed to express the true contract had between the parties. The written contract referred to is in these words:

"THIS CONTRACT AND AGREEMENT made and entered into this 9th day of September, 1916, by and between the Clay County Land & Lumber Company, a corporation under the laws of the state of Kentucky, with its principal office at Pineville, Ky., party of the first part, and D. L. Walker of Manchester, Ky., party of the second part:

"WITNESSETH: That the party of the first part for and in consideration of the party of the second part assuming and agreeing to pay to one Chas. F. Heidrick an obligation of the first party of the sum and amount of one thousand ($1,000.00) dollars, which said obligation is a subscription toward the building and completion of the Cumberland & Manchester Railroad now under construction, and which said obligation second party by these presents agrees and binds himself to pay to said Heidrick for and on behalf of first party, party of the first part has this day sold and by these presents do alien and convey unto party of the second part, his heirs and assigns, all of the saw-logs, down timber and ties owned by first party on the lands of Tennesse

White, in the river and on the Barbourville road near Alex. Bundy's residence.

"WITNESS the signatures of the parties the date first above written:

> "THE CLAY COUNTY LAND & LUMBER CO.,
> .                                 *Incorporated.*
> By E. M. HOWARD, Pres.,
> .                     Party of the first part.
> D. L. WALKER,
> .                     Party of the second part."

The contract subscribing $1,000.00 on behalf of the Clay County Land & Lumber Company was in these words:

> "IN CONSIDERATION of the building of a standard gauge railroad with rail weighing not less than sixty (60) pounds per yard from a point on the Louisville & Nashville Railroad at or near Barbourville, Kentucky, to a point on Goose creek, at or near the ford opposite Donnelly's drug store, in Manchester, Kentucky, the same to be operated as a common carrier, I, CLAY COUNTY LAND & LUMBER CO., OF PINEVILLE, KY., for myself, my heirs and assigns, hereby promise to pay to CHARLES HEIDRICK, of Brookville, Pa., his heirs and assigns as a bonus, the sum of one thousand ($1,000.00) dollars, payable in cash at such banks in Manchester or Barbourville, Kentucky, as may be designated by said Heidrick, his heirs and assigns, upon completion and putting into operation of said road, which shall be conclusive upon the filing of a certificate with each of the banks of Manchester and Barbourville, Kentucky, by the chief engineer or other official of said railroad, that the same has been completed and put into operation; provided, however, that actual construction of said road must be commenced on or before July 1, 1915, and completed within eighteen (18) months thereafter, due allowances being made for strikes, accidents and other unavoidable delays.

> "(Signed) CLAY COUNTY LAND & LUMBER COMPANY.
> .          By: M. D. SMITH, General Manager.
> (Signed) E. M. HOWARD
> (Signed) M. D. SMITH
> (Signed) W. W. EAGER."

The allegations of the answer were controverted by reply, the proof was taken by depositions and on final hearing the circuit court dismissed the plaintiff's petition.

It will be observed that the subscription contract was made before July 1, 1915, and that appellees were personally bound for the payment of this thousand dollars by the Clay County Land & Lumber Company. It will also be observed that the guaranty contract was made October 12, 1915, and by it each of the signers was personally bound, jointly and separately for the payment of the $60,000.00. It will also be observed that the contract of Walker with the Clay County Land & Lumber Company was made September 9, 1916, and that by the wording of that contract, which is drawn with care, Walker only agreed to pay Heidrick an obligation of the Clay County Land & Lumber Company of the amount of $1,000.00, its subscription toward the building of the railroad. There is no reference in the writing to the guaranty contract, or to the obligation of the parties thereto. The Clay County Land & Lumber Company was not a party to the guaranty contract; the contract of September 9, 1916, is only a contract between Walker and the Clay County Land & Lumber Company. The evidence offered by the defendants is in substance that the company sent W. W. Eager to Manchester to close the trade with Walker. He says that the agreement between him and Walker was that Walker was to assume all their obligation to Heidrick, but he was there representing the Clay County Land & Lumber Company, and if these words were used Walker might well have understood that he was only assuming the obligations of the Clay County Land & Lumber Company. On the other hand Walker testifies unequivocally that the one thousand dollar subscription is all that he assumed and that no other liability was ever mentioned to him. He is confirmed in this by the fact that the liability upon the guaranty had not then accrued. The deficiency appeared later. The only confirmation of Eager's testimony is the testimony of G. T. Howard, who says that Walker told him he had assumed "our obligation." But such a statement to one of the directors of the corporation would naturally refer to the obligation of the corporation.

A written contract deliberately and carefully drawn should not be reformed for mistake except on clear and

decisive evidence. Were the rule otherwise carefully prepared written contracts would be of little value. The purpose of reducing the contract to writing is to provide a certain memorial of what the parties have agreed to. Of course mistakes are sometimes made, but in all cases to warrant relief the mistake must be clearly proved. When Eager returned to Pineville he reported his action to the corporation. Reasonably the officers all saw the written contract. Certainly they should have seen it and read it. There was no complaint of it until this action was brought. The proof does not warrant a reformation of the contract. Robinson v. Eastern Gulf Oil Co., 196 Ky. 385.

It is also insisted that the proof does not show that the amount of the appellees' liability is $819.76. The testimony of Walker is in these words:

"Q. You may state how you arrived at the amount or the proportional part of this $17,656.91, that you are seeking to hold these defendants liable for, amounting to $819.76?

"A. By finding out the total amount that the twenty-eight guarantors had subscribed originally and paid to Chas. F. Heidrick, and then taking what proportion their donation would be of the balance of the unpaid $60,000.00, which was $17,656.91."

W. W. Rawlings also testified as follows:

"I had donated $1,000.00 originally and paid it, and under my apportionment I believe it fell to my lot to pay $819.00, and some cents, which was the same amount on my original donation that plaintiff is seeking to hold these defendants for, their original donation being the same amount. All the guarantors made good the same amount to Mr. Walker or rather on the same basis of *pro rata* that I did and everybody has satisfied Mr. Walker, that I know about, except these defendants."

There is no contrary evidence. Neither Walker nor Rawlings was asked to file their figures, and no effort was made to show that the result was incorrect. On the face of the guaranty contract the signers were each bound for one twenty-eighth of the $17,656.91, which would be very much more than the amount sued for. All the

other parties to the contract have paid on this basis and they cannot complain that the settlement has been made on a basis more favorable to them than the terms of the contract.

It is also insisted that there being no motion for new trial the judgment should be affirmed, the action having been brought in ordinary and there being no order transferring it to equity. But appellees by their answer sought a reformation of the contract, which could only be adjudged in equity. They moved to transfer the action to the equity docket, and while no order actually making the transfer appears the judgment begins with these words: "This equity cause came on to be heard and by agreement of parties the affirmative allegations contained in the reply are traversed upon the record, and the cause being thereupon submitted to the court for opinion and judgment, etc." The parties both took their proof by deposition, and plainly both of them treated it as an equity action and necessarily so treated it, for the relief which the appellees sought could only be adjudged in equity. Being an equity action no motion for new trial was necessary.

Judgment reversed and cause remanded for a judgment for the plaintiff.